478 So.2d 368 (1985)
HILL TOP DEVELOPERS, Appellant,
v.
HOLIDAY PINES SERVICE CORPORATION, Appellee.
No. 84-1617.
District Court of Appeal of Florida, Second District.
October 11, 1985.
Rehearing Denied November 20, 1985.
*369 Charles P. Pillans, III, and Andrew J. McClurg of Bedell, Dittmar, DeVault, Pillans & Gentry, P.A., Jacksonville, for appellant.
Charles W. Pittman of MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
William S. Bilenky, General Counsel, and Wayne L. Schiefelbein, Associate General Counsel, of Florida Public Service Commission, Tallahassee, amicus curiae.
FRANK, Judge.
The appellant, Hill Top Developers (HTD), contests a final judgment awarded to Holiday Pines Service Corporation (HPSC) in the amount of $52,715.88. The claimed indebtedness arose from HPSC's plant facility expansion that was required as a result of furnishing water and sewer service to 150 condominium units constructed by HTD.
The factual setting giving rise to the litigation and the events before the trial court are summarized as follows: HPSC initially billed and received from HTD $105,000.00. That charge was consistent with the Public Service Commission's (PSC) approved tariff at a rate of $300.00 per unit for water service availability and $400.00 per unit for sewer service availability. Subsequently, HPSC sought an additional $77,715.88 from HTD as its "fair share" of the cost of plant facility expansion. HTD paid $25,000.00 as a portion of the facility expansion charge but refused to pay the balance, i.e. the $52,715.88 represented by the judgment. The trial court dismissed HTD's counterclaim for $25,000.00 and foreclosed it from pursuing a defense based upon the absence of PSC approval of the charges sought by HPSC. Following the entry of the judgment, HTD petitioned the PSC for the refund of the $25,000.00 paid to HPSC and for exoneration from payments in excess of those authorized by it. HPSC reacted by commencing an action *370 in the Leon County Circuit Court seeking to enjoin the PSC from acting upon HTD's petition, asserting that the judgment presently disputed forecloses the PSC from considering HTD's petition. The fact and outcome of the Leon County litigation play no part in our disposition of the matter before us.
The core issue in this case is whether the trial court was endowed with subject matter jurisdiction to enforce a charge imposed by a regulated utility without such charge receiving the prior approval of the PSC. The appellant, and the PSC appearing before us as an amicus, urge the view that the "Water and Sewer System Regulatory Law," Chapter 367, Florida Statutes, is preemptive and thus commits to the PSC the primary and exclusive jurisdiction and power to fix the charge that in this instance was reduced to a judgment. The lack of subject matter jurisdiction may properly be raised for the first time at the appellate stage. Rodriquez v. State, 441 So.2d 1129, 1135 (Fla. 3d DCA 1983). We conclude that the lower court was without subject matter jurisdiction to award HPSC a judgment.
This matter should have been determined by the trial court through application of the judge-made "primary jurisdiction" doctrine, recognized in Florida, State ex rel. Shevin v. Tampa Electric Company, 291 So.2d 45, 46 (Fla. 2d DCA 1974), which is designed and intended to achieve a "proper relationship between the courts and administrative agencies charged with particular regulatory duties." United States v. Western P.R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). In Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086 (5th Cir.1973), the United States Court of Appeals for the Fifth Circuit explicated the doctrine in terms distinctly pertinent to this matter when it was before the trial court:
... primary judisdiction comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency. The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area. It does not defeat the court's jurisdiction over the case, but coordinates the work of the court and the agency by permitting the agency to rule first and giving the court the benefit of the agency's views ... 475 F.2d at 1091-1092.
In the circumstance where the primary jurisdiction doctrine is applicable, the judiciary, although possessing subject matter jurisdiction to pass upon the asserted claim, stays its hand and defers to the administrative agency in order to maintain uniformity at that level or to bring specialized expertise to bear upon the disputed issues. Cf. Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. 3d DCA 1959). Thus, here, where it cannot be questioned that the trial court was invested with subject matter jurisdiction to entertain the action cast in terms of a contractual debt owed by HTD to HPSC, application of the primary jurisdiction principle simply would have required the trial court to abate the proceeding until such time as an order was issued by the PSC, pursuant to its powers conferred by section 367.101, Florida Statutes, determining the justness and reasonableness of the facility expansion charge. The proceeding in the lower court, of course, would have been delayed pending the PSC's action and judicial review, if sought, of its order. Such delay, however, would have preserved the respective jurisdictions of the PSC and the trial court.
As logical as application of the primary jurisdiction doctrine to the matter at hand would have been, it was not followed. The trial court's entry of a judgment in favor of HPSC thus requires us to consider still another principle commonly known as the "preemption doctrine." That doctrine, also recognized in Florida, Maxwell v. School Board of Broward County, 330 So.2d 177 (Fla. 4th DCA 1976), insures that a legislatively intended allocation of *371 jurisdiction between administrative agencies and the judiciary is maintained without the disruption which would flow from judicial incursion into the province of the agency. See Laborers International Union of North America, Local 517 v. The Greater Orlando Aviation Authority, 385 So.2d 716 (Fla. 5th DCA 1980). We conclude upon the present record that the power and authority of the PSC are preemptive. It is plain beyond any doubt that in formulating Chapter 367, the Legislature desired exclusive jurisdiction to rest with the PSC to regulate utilities such as the HPSC and to fix charges for service availability. §§ 367.011(2) and 367.101, Fla. Stat.; see Richter v. Florida Power Corp., 366 So.2d 798 (Fla. 2d DCA 1979). The trial court, by asserting its jurisdiction and awarding HPSC a judgment, literally cast itself in the role of the PSC. It is by honoring the jurisdictional exclusivity of the PSC that the very collision which has occurred here between an administrative agency and the judiciary would have been avoided. Stated differently, in entering a judgment in favor of HPSC, the trial court placed its imprimatur upon the service availability charge assessed against HTD and denied to the PSC its statutorily delegated responsibility to determine the validity of that charge.
In a matter of this sort, we believe it is appropriate to signal to the attention of the bench and bar that a more demanding pleading standard might have forestalled the trial court's encroachment upon the exclusive jurisdiction of the PSC. The HPSC should have been required to plead that its plant facility expansion charge had been approved by the PSC. The failure to plead that fact imposed an infirmity upon the debt claim which ousted the trial court of subject matter jurisdiction to grant HPSC a judgment.
We, with deference to Judge Ott's views, find the dissent unpersuasive. To treat this matter as one in which HPSC is simply seeking to recover a debt owing under a contract is to beg the core question. Admittedly HPSC sought to recover money arising from the expansion of plant facilities undertaken to provide HTD with service, but that charge is expressly one within the regulatory authority of the PSC. See Florida Waterworks Ass'n v. Florida Public Service Commission, 473 So.2d 237 (Fla. 1st DCA 1985) ("service availability charge" and "contribution-in-aid-of construction" are synonymous and thus within the PSC's authority to regulate). The essential defect we find in the dissent emerges from contrasting the authorities relied upon in Judge Ott's analysis with the exclusive statutory authority of the PSC to regulate in the first instance the charge which became the debt. Thus, Deltona Corp. v. Mayo, 342 So.2d 510 (Fla. 1977) (no statutory authority to redress fraudulent misrepresentations expressed to purchasers of property), Southern Bell Telephone and Telegraph Co. v. Mobile American Corp., Inc., 291 So.2d 199 (Fla. 1974) (no authority to remedy negligence claim), Cohee v. Crestridge Utilities Corp., 324 So.2d 155 (Fla. 2d DCA 1975) (rate increase occurred prior to PSC's authority to regulate), and Winter Springs Development Corp. v. Florida Power Corp., 402 So.2d 1225 (Fla. 5th DCA 1981) (at the time of the contractual undertaking, there was no charge requiring PSC approval), are inapposite in the context of the statutory and factual elements composing the present proceeding. Finally, our disposition of this matter in no measure offends Article I, Section 21 of the Florida Constitution. Access to the judiciary is not foreclosed by our decision; resort to the judiciary is available following utilization of the administrative process. § 350.128(1), Fla. Stat.; Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974). Once a charge of this kind becomes finally determined in accordance with the statutory scheme, a juridically cognizable debt would exist if the charge were not satisfied.
Accordingly, we reverse the trial court, vacate the judgment and direct that the amended complaint be dismissed.
RYDER, C.J., concurs.
OTT, J., dissents with opinion.
*372 OTT, Judge, dissenting.
I respectfully dissent.
The PSC's powers, duties, and authority are only those that are conferred expressly or impliedly by statute. Any reasonable doubt as to the lawful existence of a particular power sought to be or that is being exercised by the PSC must be resolved against the exercise thereof. City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493, 494 (Fla. 1973).
There is no doubt that section 367.011(2), Florida Statutes (1981), grants the PSC exclusive jurisdiction over utilities with respect to authority, service, and rates. A reasonable doubt, to say the least, does exist that Chapter 367 and the administrative rules adopted pursuant thereto grant to the PSC exclusive jurisdiction or authority to entertain an action for a debt owing to a utility from a developer pursuant to an agreement between them. Further, it is reasonably doubtful that the PSC has subject matter jurisdiction, whether primary or at all, over this type of action. See Deltona Corp. v. Mayo, 342 So.2d 510 (Fla. 1977) (PSC has no authority to vindicate breaches of private contracts); Southern Bell Telephone & Telegraph Co. v. Mobile America Corp., 291 So.2d 199 (Fla. 1974) (PSC has no authority pursuant to Chapter 364 to enter award of money damages for past failures to provide telephone service meeting statutory standards); Cohee v. Crestridge Utilities Corp., 324 So.2d 155 (Fla. 2d DCA 1975) (only court of law empowered to adjudicate whether utility breached contract by going to higher rates); Winter Springs Development Corp. v. Florida Power Corp., 402 So.2d 1225 (Fla. 5th DCA 1981) (PSC has no jurisdiction to award money damages in action on contract).
Florida Administrative Code Rule 25-10.129, in effect at the time the agreement in controversy was made,[1] provided that "disputes concerning the application of these rules and developer agreements may be referred to the" PSC. (Emphasis added.) This rule, however, implemented section 367.101, Florida Statutes (1981), which related to charges for service availability and provided:
(1) The commission, by rule, may set standards for service-availability charges and service-availability conditions. Charges and conditions made by a utility shall be just and reasonable. The commission shall, upon request or upon its own motion, investigate agreements or proposals for charges and conditions to be made by a utility for service availability. The commission shall set just and reasonable charges and conditions for service availability. [Emphasis added.]
This section of the statute cannot be read to confer jurisdiction upon the PSC to hear an action for a debt owing under a contract. This section merely empowers the PSC to review the reasonableness of service availability charges contained in agreements entered into by a utility.
Additionally, I do not read section 367.121(1)(g) which provided:
(1) In the exercise of its jurisdiction, the commission shall have power:
.....
(g) To exercise all judicial powers, issue all writs, and do all things necessary or convenient to the full and complete exercise of its jurisdiction and the enforcement of its orders and requirements .. .
to confer authority upon the PSC to hear this action because the Legislature has not, at the same time, granted the PSC jurisdiction to award money damages. Even if it had, it is doubtful to me whether such a grant would have passed muster under article V, section 5(b) of the Florida Constitution, which vests the circuit courts with the power to hear these actions. See generally English v. McCrary, 348 So.2d 293 (Fla. 1977); State ex rel. Jones v. Wiseheart, *373 245 So.2d 849 (Fla. 1971); Florida Water & Utilities, Inc. v. Cutter Ridge Associates, 376 So.2d 273 (Fla. 3d DCA 1979). This is further reinforced by the state constitutional right of access to the courts to redress wrongs and the doctrine of separation of powers. The federal courts, to the contrary, have only the jurisdiction or causes of action to adjudicate such as Congress may confer or create, except for the limited constitutional grant of jurisdiction found in article III, section 2 of the United States Constitution.
The issue in this appeal is not, as the majority states, "whether the trial court was endowed with subject matter jurisdiction to enforce a charge imposed by a regulated utility without such charge receiving the prior approval of the PSC." The complaint herre did not seek reimbursement by the consumer for allegedly unreasonable fuel adjustment charges as in Richter v. Florida Power Corp., 366 So.2d 798 (Fla. 2d DCA 1979). Further, this case is not a dispute relating only to rates and charges for services or installation under the Florida Administrative Code as in Florida Power Corp. v. Advance Mobile Homes, Inc., 386 So.2d 897 (Fla. 5th DCA 1980). In both Richter and Advance Mobile Homes, the causes of action were held to be within the exclusive jurisdiction of the PSC. The complaint before the trial court in the present case stated a cause of action for money damages owing to HPSC (the utility) from HTD (the developer) based upon an agreement between the two parties. The issue, therefore, is whether the Legislature, by enacting Chapter 367, intended to oust the circuit court of jurisdiction to hear this claim and give that authority to the PSC. For the reasons stated above, I think not. As the Fifth District observed in Winter Springs Development Corp., "[t]he mere fact that the damages for breach of this particular contract may be measured by the amount plaintiff had to pay as a rate and charge for underground services ... does not mean that this controversy must be taken to the Florida Public Service Commission." 402 So.2d at 1228.
Moreover, I just do not see how the PSC could enforce a money judgment against HTD, a developer, who is clearly not regulated by or under the authority of the PSC. Admittedly, HPSC, as a utility, is governed by the rules and authority of the PSC. The PSC's power to govern and regulate the utility is the quid pro quo for the Legislature's grant of a monopoly to the utility. No such relationship exists with respect to the developer; therefore, no such authority to enforce an order against the developer exists.
Accordingly, I would hold that the PSC is not vested with jurisdiction, exclusive or otherwise, to hear this action on a debt owing under a contract. The jurisdiction to hear and award a money judgment in this cause remains with the circuit court.
The main thrust of HTD's appeal is that it should not have to pay the damages sought by HPSC because the charges were not given prior approval by the PSC pursuant to sections 367.011(2) and 367.101(1). First, there is nothing in the cited statutory authority or in the rules which states that these charges or the agreement shall be approved by the PSC before becoming effective. As noted above, section 367.101(1) provides for PSC investigation of agreements for service availability charges, "upon request or upon its own motion." There has been no allegation that any such request or motion was made before the present action was brought. Further, there is nothing in this section which would render this particular agreement or the charges void for failure to obtain the PSC investigation. Rule 25-10.139 did require two copies of all developer's main extension agreements be filed with the PSC within ten days after execution. That rule, however, did not provide that a contract not so filed will be void or ineffective. Only rule 25-10.138, relating to special contracts for revenue guarantees, stated, "[a]ll such agreements shall be approved by the Commission before becoming effective." Thus, there is nothing in the statute or rules which would render the charges or the agreement here void, or even voidable, for not obtaining prior approval from the PSC.
*374 Second, even if prior approval was required, the defense of statutory noncompliance should have been, but was not, pleaded in HTD's answer or in its counterclaim against HPSC. It was not until the trial was in progress that HTD tried to raise this defense. An affirmative defense, such as statutory noncompliance, which is not raised by the pleadings or tried by express or implied consent is waived. Fla.R.Civ.P. 1.110(d); Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90 (Fla. 1st DCA 1979). Therefore, the trial court was well within its discretion in excluding evidence on this issue. Sonnenblick-Goldman of Miami Corp. v. Feldman, 266 So.2d 48 (Fla. 3d DCA 1972).
The majority opinion, while holding that the trial court did not have jurisdiction to hear this cause, seems to state that even if the trial court did have jurisdiction, it should have abated the proceedings until the PSC ruled upon the facility expansion charge. The trial court, however, is not required to abate such proceedings. This is especially true in this case where the matter of PSC approval, if required at all, was not timely raised. As the supreme court stated in Southern Bell Telephone & Telegraph Co. v. Mobile America Corp.:
If a complaint raises intricate problems of a technical nature requiring an expert determination of whether the standards set by statute and implemented by more detailed regulations have been met in a particular instance, the court should be free, though not required, to refer such matters to the PSC for its findings, in order to obtain the benefit of the state regulatory agency's specialized expertise in the field ...
... The ultimate issues raised in a suit for money damages for a completed, past failure to meet the statutory standard are, however, a matter of judicial cognizance and determination. Whether the circumstances of a particular case are such as to indicate that the circuit court should refer the matter to the PSC for findings is a determination resting solely within the sound discretion of the circuit court.
291 So.2d at 202.
As a closing note, I hasten to add that this dissent should not be read to mean that the PSC has no authority at all over these charges or this agreement. First, the PSC can, upon proper application or upon its own motion, investigate this agreement and these charges to determine the reasonableness thereof. If it should determine that the charges are unreasonable, then it may order the utility to refund a portion of the charges to the consumer. § 367.101(1), Fla. Stat. (1981); Richter. Second, the PSC could, under section 367.161, impose a penalty on the utility for failing to file the agreement, or for any other knowing and willful failure to comply with the PSC's provision. Third, and finally, the PSC can determine how this charge will be included in the utility's rate base and, therefore, affect its rate-making structure. § 367.081(2), Fla. Stat. (1981). The trial court's determination that the developer, HTD, owed the utility, HPSC, damages under their agreement does not in any way affect the PSC's power to take any or all of the above actions.
Thus, because the trial court was empowered to hear and decide this cause and because the affirmative defense, if any, of statutory noncompliance or the abatement of proceedings issue was not timely raised in the trial court, I would affirm its judgment which awarded money damages to HPSC based upon the contractual debt owed by HTD.
NOTES
[1] The rules governing the utility at the time the agreement was made, Fla. Admin. Code Rules 25-10.120-10.144, were repealed on June 14, 1983. They were replaced on that date by Florida Administrative Code, Chapter 25-30. That chapter, however, has no application to this action. Fla. Admin. Code Rule 25-30.51.