556 So.2d 163 (1990)
Sherryl B. BUQUOI, as Tutrix for her Minor Son, Brad Branson
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 89-CA-564.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
*164 Barbara A. Arnold, New Orleans, for Sherryl B. Buquoi, plaintiff-appellant.
Lobman, Carnahan & Batt, David V. Batt, Wayne R. Maldonado, Metairie, for State Farm Mut. Auto. Ins. Co., defendant-appellee.
Before CHEHARDY, C.J., and GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Plaintiff, Sherryl B. Buquoi, as tutrix for her minor son Brad Branson, appeals a judgment rendered in her favor against her uninsured/underinsured motorist carrier, State Farm Mutual Automobile Insurance Company. The judgment was handed down following a jury trial in an automobile accident case.
Two issues are presented by plaintiff on appeal. The first questions the adequacy of the damage award for Brad Branson's personal injuries. The second issue involves the propriety of a credit given to State Farm in the amount of $38,190 for payments paid to plaintiff prior to trial.
The accident occurred on the evening of September 4, 1987 as 14-year-old Brad and several teenage friends were driving to a local dance. The driver of the car was Mark Jelks and Brad was a passenger in the front seat. As the group was travelling along, a car suddenly backed out into the street immediately in front of the Jelks vehicle, causing the Jelks vehicle to swerve into a nearby ditch located parallel to the roadway. Brad was injured in the crash and an ambulance was summoned. The other vehicle left the accident before the police and ambulance arrived and before anyone was able to obtain any pertinent information from the driver.
Brad was taken to a local hospital emergency room where he complained of cuts, abrasions, a sore ankle, double vision and pain in the right eye. Dr. Alberto Arrillaga, a plastic surgeon, was called in to treat Brad because of the cuts sustained by the teenager. Dr. Arrillaga examined Brad and ordered X rays of Brad's face, hand and ankle. He determined Brad sustained severe lacerations to the right hand, a sprained ankle and a bruised right elbow. The X rays failed to show any fracture or other injury to Brad's nose or orbital cavity. Dr. Arrillaga then cleaned, debrided (evened out), and stitched the lacerations on Brad's hand. Brad was told to return to Dr. Arrillaga's office the following morning.
Brad was seen by Dr. Arrillaga or his partner four more times. On those occasions Brad continued to complain of double vision and at one point, spitting up blood. X rays were taken on two separate visits and they showed blood in the sinus, but no other injuries.
Brad subsequently went to Dr. Delmar Caldwell, an opthalmologist, on September 24, 1987. Dr. Caldwell found Brad suffered a "blow out" fracture wherein the bone under the eye fractures due to the pressure of a blow to the eye. On September 29, 1987, Dr. Caldwell operated on Brad to repair the fracture and free the impinged-upon muscles. To do this, Dr. Caldwell had to implant a silastic implant in the area and wire the implant in place under the orbital floor. Brad was discharged the following day with instructions to return the day after his discharge. The surgery eliminated most of Brad's difficulty with double vision, but left him with a permanent problem with his upward and downward gaze, due to the scarring effects of the surgery.
*165 Plaintiff, Brad's mother, subsequently filed suit against Mark Jelks and his parents; Allstate Insurance Company, the Jelks' insurer; and State Farm, her uninsured/underinsured motorist carrier. Prior to trial, the Jelks and Allstate settled the claim for $25,000 plus a previously paid amount of $2,000. The case against State Farm was tried before a jury on June 12 and June 13, 1989, following which a verdict was rendered in plaintiff's favor in the amount of $15,000, including medical expenses. The judgment incorporating the jury's findings further awarded State Farm a credit of $38,190 based on stipulations made by the parties at the commencement of the trial.
Plaintiff asserts the award is inadequate considering the facts and similar cases in the jurisprudence. She contends the facts show Brad incurred $7,400 in medical expenses, has a permanent loss of use of his eye in regard to any upward or downward movement, will be unable to engage in certain occupations and has a greater chance of contracting glaucoma or cataracs in the injured eye. Furthermore, plaintiff points out Brad had to undergo major eye surgery, plastic surgery to his hand resulting in permanent scars, suffered a sprained ankle and other minor injuries. She concludes Brad's injuries entitle him to an award of at least $50,000.
The trier of fact has great discretion in awarding damages, thus those awards are subject to modification by the appellate court only when the award for the particular injuries and their effects upon the injured party is a clear abuse of the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La. 1979). When the appellate court finds an abuse of discretion, it can modify the award, but only to the extent of raising (or lowering) it to the lowest (or highest) point which is reasonably within the discretion of that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Gravois v. Succession of Trauth, 498 So.2d 140 (La.App. 5 Cir. 1986).
The evidence herein shows Brad has a permanent non-correctible impairment to his vision, i.e. his upward/downward eye movements result in double vision. The only way Brad can avoid the problem is by raising or lowering his head. Thus, his career and recreational opportunities will be limited. In addition he was forced to undergo the pain and suffering related to his other injuries  sprained ankle, cuts, bruises, abrasions, major surgery on his eye, minor surgery on his hand  and he has been left with permanent scars on his hand. As a result he has incurred medical expenses in the amount of $7,400.
The jury awarded Brad $15,000 to compensate him for his injuries, $7,400 of which is attributable to his medical expenses. Thus, the general damage award totals $7,600. Considering the injuries and the permanent residual eye problem limiting Brad's activities and occupational choices, we find the jury award to be so low as to constitute an abuse of discretion.
In determining the appropriate award, we have reviewed similar eye injury cases. The awards therein range from $15,000 to $75,000 and date from 1983 to 1987. See: Berry v. City of Monroe, 439 So.2d 465 (La.App. 2 Cir. 1983) (bruised eye, 3-week recovery, residual epileptic seizures  $25,000 general damages); Cullivan v. State Farm Mut. Auto Ins. Co, 428 So.2d 1231 (La.App. 3 Cir.1983) (blow-out fracture of eye, residual drifting eye  $15,000 general damages) Schweiger v. Sanders, 449 So.2d 681 (La.App. 5 Cir.1984) (orbital fracture, surgery to correct double vision, silastic sheet implant, residual glare problem  $15,000); Moreland v. Brasseaux, 445 So.2d 1236 (La.App. 3 Cir.1984) (injury to eye, uncertain recovery  $15,000 general damages); Broussard v. Peltier, 479 So.2d 679 (La.App. 3 Cir.1985) (rupture and hemorrohage of eye, residual decrease in vision  $30,000 general damages); Foster v. Lafayette Ins. Co., 504 So.2d 82 (La.App. 2 Cir.1987) (eye injury, scarring, residual light sensitivity, impaired vision  $75,000); Whitacre v. Halo Optical Products, Inc., 501 So.2d 994 (La.App. 2 Cir. 1987) (compression injury to eye, residual enlarged pupil and sensitivity to glare  $20,000 general damages).
*166 While some of the plaintiffs in those cases have residual eye impairments, none have sustained the permanent double vision problem as is the case here. Considering Brad's injuries, along with the limiting and permanent nature of Brad's eye damage, we conclude $45,000 is the lowest amount the award can be raised to which is reasonably within the trial court's discretion.
Plaintiff next complains the credit given to State Farm by the trial judge should be reversed. She claims the defendant failed to prove the amount claimed was actually paid. Although this issue was the subject of a stipulation, she argues the stipulation should be revoked because State Farm breached its stipulated agreement not to mention payments made to plaintiff in front of the jury.
A stipulation has the effect of a judicial admission which is binding on all parties and the court when not in derogation of law. R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600 (La. 1983). It may be revoked only on the ground of error of fact. LSA-C.C. art. 1853; Ogg v. Ferguson, 521 So.2d 525 (La. App. 4 Cir.1988). Since plaintiff does not assert an error of fact or any other compelling reason to revoke the stipulation, nor is the stipulation in derogation of law, we find no reason to reverse the trial court judgment awarding defendant a credit of $38,190.
Accordingly, the judgment of the trial court is hereby amended to increase the damage award in favor of plaintiff, Sherryl B. Buquoi, as tutrix for her minor son, Brad Branson, to $45,000 against defendant State Farm Mutual Automobile Insurance Company. The judgment is otherwise affirmed.
Costs of this appeal are to be paid by appellee.
AMENDED AND AS AMENDED AFFIRMED.